## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

LOUIS J. RUMSEY,                    )
                                   )
             Plaintiff,            )
                                   )
vs.                                )       Case No. CIV-05-1136-F
                                   )
ONEOK, INC.,                       )
                                   )
             Defendant.            )

## ORDER

Before the court is Defendant's Summary Judgment Motion, filed October 2, 2006 (doc. no. 33). Plaintiff has responded, and defendant has replied. The motion is ready for determination.

Background

In the Second Amended Complaint filed July 24, 2006 (doc. no. 25), plaintiff, Louis J. Rumsey ("Rumsey"), alleges defendant, ONEOK, Inc. ("ONEOK"), engaged in discriminatory and retaliatory conduct in violation of the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. § 621, *et seq*., the American with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101, *et seq*., and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq*. Rumsey also alleges that ONEOK engaged in discriminatory conduct based upon handicap in violation of the Oklahoma Anti-Discrimination Act ("OADA"), 25 O.S. 1991 § 1101, *et seq.,* and engaged in discriminatory conduct based upon age in violation of Oklahoma's public policy against age discrimination as set forth in the OADA.

ONEOK moves for summary judgment in regard to all of Rumsey's federal and state claims. Specifically, ONEOK contends:

1.  Rumsey's actual disability claim under the ADA fails as a matter of law because Rumsey's ability, while away from work, to perform a wide array of activities disproves any notation of actual disability;

2.  Rumsey's "record of" disability claim under the ADA fails as a matter of law because no evidence supports such a claim;

3.  Rumsey's perceived disability claim under the ADA fails as a matter of law because ONEOK never regarded Rumsey as disabled;

4.  Rumsey's retaliation claim under the ADA fails as a matter of law because the evidence negates any inference of retaliation against Rumsey based on his December 23, 2004 accommodation request and because the decision maker in this case, Craig Forsander, had no knowledge of the January 18, 2005 EEOC charge prior to Rumsey's discharge on January 20, 2005;

5.  Rumsey's discrimination claim under the ADEA fails as a matter of law because there is no evidence that Craig Forsander took any adverse action because of Rumsey's age;

6.  Rumsey's ADEA damage claim for alleged actions taken against Rumsey prior to discharge fails as a matter of law because the undisputed evidence demonstrates that Rumsey received full pay while off work;

7.  Rumsey's retaliation claim under the ADEA fails as a matter of law because Craig Forsander had no knowledge of the January 18, 2005 EEOC charge prior to Rumsey's discharge on January 20, 2005;

8.  Rumsey's involuntary leave claim under the FMLA fails as a matter of law because involuntary leave claims have been routinely rejected by courts;

9.  Rumsey's interference claim under the FMLA fails as a matter of law because Rumsey had no right to intermittent or reduced schedule FMLA leave and claims based on a "right to take future FMLA leave" have been routinely rejected;

10.   Rumsey's retaliation claim under the FMLA fails as a matter of law because Rumsey cannot establish any protected/opposition activity on his part and because too much time elapsed between the end of Rumsey's FMLA leave and his termination to establish a causal connection; and

11.   Rumsey's state law claims fail as a matter of law for the same reasons stated in regard to the ADA and ADEA claims and because all actions taken by ONEOK were taken for legitimate non-discriminatory and non-retaliatory reasons and no evidence of pretext exists.

Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party has the burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial.  Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Relevant Facts

The following relevant facts are either undisputed or taken in a light most favorable to Rumsey.

ONEOK is a diversified energy company involved in oil and gas production, natural gas processing, gathering, storage and transmission in the mid-continent areas of the United States.  Rumsey became an employee of ONEOK in 1999 after the operations of his former employer were acquired by ONEOK.  During his employment, Rumsey was a pipeline operator assigned to ONEOK's Custer System, a natural gas gathering and pipeline system in western Oklahoma.  Rumsey's supervisor was Roy Bradford ("Bradford"), Supervisor Maintenance.  Bradford's immediate supervisor was Wayne Bennett ("Bennett"), Area Manager Operations, and Bennett's immediate supervisor was Craig Forsander ("Forsander"), Manager Operations.

Physical demands of the pipeline operator job included, among others: (a) lifting and moving objects weighing up to 10 lbs., 20 lbs., and 30 lbs.; (b) lifting and moving objects weighing over 50 lbs.; (c) traveling over uneven terrain, including mud, gravel, sand, rocks, ice and snow; (d) walking, standing, kneeling, stooping and driving for extended periods; (e) climbing on tank ladders; (f) climbing, bending, twisting and crawling; and (g) reacting to emergency situations.

Rumsey had a history of back problems which required him to periodically seek medical treatment, including various types of therapies.  In 2003 and 2004, Rumsey saw physicians for back pain.

On Friday, June 4, 2004, Rumsey consulted Dr. Altshuler for back pain.  Dr. Altshuler scheduled Rumsey for therapy and scheduled him for another appointment with the doctor for June 21, 2004.  The next Monday,  Rumsey asked Bradford, his supervisor, about using his company pickup to drive from Elk City, Oklahoma to

Yukon, Oklahoma twice a week for therapy treatments.  Bradford told him that he did not have the authority to approve his request and that he would have to check with Bennett.

On June 16, 2004, after a mandatory safety meeting, Bennett observed Rumsey having difficulty walking back to his company pickup.  Rumsey discussed with Bennett his request to take the company pickup to Yukon twice a week.  Bennett said it was okay with him to use the pickup, but he would have to check with Forsander. Bennett also noticed that Rumsey's pickup seat had been altered to make it more comfortable.  According to Rumsey, the seat had been broken by Bradford while he was driving the truck.  Bradford had told Rumsey to find a replacement seat from the salvage yard, but he had been unable to find one.  Because he could not find a replacement seat, he placed a 4x4 post under the seat.

Later that day, Bennett contacted Forsander regarding Rumsey's request to use the company pickup to travel to Yukon for his therapy treatments.  After discussing the matter, Forsander and Bennett called Robin Saenz ("Saenz"), ONEOK's Human Resource Consultant.  Bennett described his observations about and conversation with Rumsey.  Forsander and Bennett then told Saenz that Rumsey had been having difficulty performing his job duties, and that other employees, at times, had assisted Rumsey with work he could not complete or with which he needed help.  Saenz provided some options to Forsander and Bennett, including setting up a medical evaluation to see if Rumsey could perform the essential functions of his job. Forsander decided to take that approach and he told Saenz to call Rumsey and tell him to stay home.

Saenz thereafter called Rumsey and told him to go home and not report to work the next day.  Saenz called Rumsey the next day,  requesting the names, addresses and

telephone numbers of all Rumsey's doctors and the medications he was taking.  In her telephone call, Saenz informed Rumsey not to return to work until otherwise notified.

According to Rumsey, he had been able to perform the pipeline operator job duties before and on June 16, 2004.  He did not receive any more help from co-workers than anyone else.  Prior to June 16, 2004, no one in management had ever told him that he was not performing his job duties satisfactorily or not doing all of his assigned job duties.

Rumsey underwent back therapy treatments on June 18, 2004 and June 21, 2004.  Rumsey told Dr. Altshuler at his appointment on June 21 that he had been sent home and told not to return to work until otherwise notified.  Dr. Altshuler gave Rumsey a statement which set forth work restrictions of no lifting over 15 lbs., no climbing and no twisting.  Rumsey gave the work restrictions to Bradford and Bennett.  Bennett said he would fax the work restrictions to Forsander and told Rumsey to stay at home until a decision was made.

By e-mail dated June 22, 2004, Bennett provided Forsander with Rumsey's work restrictions and a Payroll Status Change form for use in placing Rumsey off work, effective June 17, 2004, under ONEOK's Sickness Benefits policy.  Forsander approved Rumsey's placement on sickness benefits.

Rumsey was notified by letter dated June 29, 2004 of his placement on FMLA leave.  Rumsey's FMLA leave was designated as starting on June 17, 2004.  Under ONEOK's FMLA policy, Rumsey was required to substitute accrued paid leave for unpaid FMLA leave.  Thus, his FMLA leave ran concurrently with his paid sickness benefits.  Rumsey's 12 weeks of FMLA leave ended on September 10, 2004 and Rumsey remained off work using the remaining paid sickness benefits.  Rumsey's work restrictions (no lifting over 15 lbs., no climbing and no twisting) remained in

effect through September 15, 2004.  Dr. Altshuler imposed an additional work restriction (no stooping) on September 16, 2004.

On November 2, 2004, Saenz notified Rumsey that he was scheduled for a functional capacity evaluation ("FCE") to take place on November 10, 2004.

On November 8, 2004, Dr. Altshuler changed Rumsey's work restrictions to no lifting over 20 lbs., no climbing, no twisting and no stooping.

On November 10, 2004, Rumsey completed his FCE.  Results reflected that Rumsey was capable of sustaining a light level of work for an 8 hour day.  The results were forwarded to Dr. Altshuler, Saenz and Rumsey.  According to Rumsey, the FCE was not accurate as he had been told not to take his prescribed medication and had been told when to stop on certain tasks, including lifting.

On November 10, 2004, Dr. Altshuler, based on the completed FCE, issued new work restrictions and stated that Rumsey was "currently in the <u>Light</u> overall work levels for <u>8</u> hrs./day based on [the FCE] testing."  *See*, Ex. 23 to ONEOK's motion.

By letter dated November 18, 2004, Saenz asked Rumsey to review open jobs in the company to see if he had any interest in any of the jobs.  Saenz provided Rumsey a listing of open jobs in the company and a 1-800 phone number to access information about other open jobs.  Rumsey carefully reviewed the list and found none of the jobs to be suitable to him.  Saenz did not inform Rumsey that he could access jobs with other ONEOK-related companies by calling that 1-800 number.  Rumsey did not call the 1-800 number.

Rumsey did not participate in any "vocational assessment" pursuant to ONEOK's Vocational Assessments policy.  A vocational assessment is to assist in identifying and evaluating job accommodations that can be made in the work place and determining whether there are other jobs available that the employee can perform with the disabilities experienced.  Under the Vocational Assessments policy, a request

for assessment is to be made "[w]hen it is known or reasonably expected that the employee will not be able to return to the job assigned prior to the disabling condition or at the end of the existing benefit period for the employee."  The request is to be made by the employee's supervisor.  The supervisor is to contact the Manager-EEO and Employee Assistance Program for initial consultation.  *See*, Ex. 7 to Rumsey's response.

On November 24, 2004, Rumsey faxed to Saenz new work restrictions imposed by Dr. Altshuler.  These restrictions were: no lifting greater than 40 lbs. and occasional climbing.

On November 30, 2004, Rumsey faxed Saenz a statement dated November 29, 2004 from Dr. Altshuler which read in pertinent part:

> WORK STATUS
>     [BACK] TO WORK:   As of 11-30-04_____
>     ESTIMATED TIME OFF:   _____
>     LIGHT DUTY:   _____
>         Restrictions:   -None_____
>               100% released_____
>     FULL DUTY:   _____
>     PATIENT RELEASED ON:   _____
>         Vocational retraining:   _____

*See,* Ex. 26 to ONEOK's motion.

On December 6, 2004, Rumsey telephoned Bradford and told him that he had been given a 100% release from Dr. Altshuler.  Bradford told Rumsey that he could not do anything, but he would call the Tulsa office and let them know.  Bradford called Rumsey back and told him Saenz was going to set up a retest at the Jim Thorpe facility.

On December 6, 2004, Saenz sent Dr. Robert Lovell, D.O., Dr. Altshuler's November 29, 2004 statement, Rumsey's FCE results, a pipeline operator job description, and Dr. Altshuler's prior work restrictions on Rumsey. Dr. Lovell was asked for an opinion as to whether Rumsey could return to work and safely perform the essential functions of his pipeline operator job. Saenz also included information as to Rumsey's birth date and age.

On December 14, 2004, Rumsey's paid sickness benefits were exhausted. Rumsey began receiving paid vacation benefits.

In a letter dated December 17, 2004, Dr. Lovell, from the information provided, recommended a job with requirements in the light work range. Dr. Lovell never talked with or examined Rumsey prior to making his recommendation.

On December 21, 2004, Saenz informed Rumsey that ONEOK would not pay for a retest at the Jim Thorpe facility. Rumsey's wife contacted the Jim Thorpe facility to schedule a test, but there was no openings until the end of January 2005.

On December 23, 2004, Saenz called Rumsey to advise him of Dr Lovell's opinion that Rumsey was capable of light duty work.

Rumsey went to the EEOC. Upon advice and recommendation of the EEOC representative, Rumsey sent a letter to Saenz requesting reasonable accommodations under the ADA.

On January 3, 2005, Saenz and Bennett met with Rumsey and his wife to discuss Rumsey's current job status and his accommodation request. Saenz asked Rumsey what ONEOK could do to accommodate him and make his job easier. At the recommendation of another ONEOK employee, Joe Miller, Rumsey asked that pneumatic actuators be placed on 8, 10 and 12 inch valves. Ramsey also requested that his company pickup seat be changed.

By letter dated January 12, 2005, Saenz informed Rumsey: (1) outfitting all 8 inch or larger valves (158 valves) with pneumatic actuators did not appear reasonable because it would cost approximately $553,000 plus labor costs; (2) Forsander was not aware of any modifications/accommodations which would allow Rumsey to return to his pipeline operator job; (3) Forsander was not able to identify any temporary/ meaningful limited duty assignments for Rumsey; and (4) Forsander did not know of any current job openings, or ones coming open soon, in which Rumsey might be placed as a reassignment. Saenz also asked Rumsey to review additional listings of open jobs within the company to see if he was interested in any of them. Rumsey did not believe he was qualified to perform any of the jobs listed.

On January 18, 2005, Rumsey contacted Saenz and told her to leave out the 8 inch valves and only put pneumatic actuators on the 10 inch and 12 inch valves. Rumsey intended the request only apply to his assigned work area, which had a total of 8 values that were 10 or 12 inches. He did not intend it to apply to every valve in the Custer field. ONEOK, however, examined the cost of outfitting all 10 inch and 12 inch values in Custer field with pneumatic actuators and concluded the cost to be approximately $462,200, not including labor costs.

On January 19, 2005, all of Rumsey's paid company benefits were exhausted. The next day, on January 20, 2005, Forsander made the decision to terminate Rumsey's employment and informed him of the decision by letter.

At the time of his discharge, Rumsey was 68 years old.

Discussion

I.    ADA Claim Based Upon Actual Disability, OADA Claim Based Upon Actual Handicap and FMLA Claims

Rumsey, in his response, agrees that the aspect of his ADA claim based upon actual disability and the aspect of his OADA claim based upon actual handicap should

be dismissed.  He also agrees that all of his claims under the FMLA, including involuntary leave, interference and retaliation should be dismissed.  In light of Rumsey's representations and the fact that the evidence in the record demonstrates that ONEOK is entitled to a judgment as a matter of law on those claims, the court finds that summary judgment is appropriate on the ADA claim based upon actual disability, the OADA claim based upon actual handicap and the FMLA claims.

II.   <u>ADA/ADEA Retaliation Claims, ADA/ADEA Claims Based Upon Actions Prior to Discharge and ADEA Damage Claim Based Upon Actions Prior to Discharge</u>

ONEOK, in its reply, states that Rumsey failed to respond to its arguments, evidence and legal authorities in regard to his ADA and ADEA retaliation claims and his ADA and ADEA discrimination claims based on alleged actions against him prior to discharge.  In light of his failure to so respond, ONEOK contends that Rumsey has abandoned or confessed these claims and that summary judgment should be awarded to ONEOK on those claims.

ONEOK is correct that Rumsey has not addressed the arguments, evidence and legal authorities in regard to the challenged claims.  The court, upon review of the record, concludes that ONEOK has established that it is entitled to judgment as a matter of law on these claims.  The court therefore concludes that summary judgment is appropriate on the ADA and ADEA retaliation claims, the ADA and ADEA claims based upon actions prior to discharge and the ADEA damage claim based upon actions prior to discharge.

III.   <u>ADEA Discriminatory Discharge Claim</u>

A plaintiff seeking to prove age discrimination may do so by presenting direct evidence of discriminatory motivation, such as oral or written statements by a supervisor reflecting age bias.  *See*, <u>Jones v. Unisys Corp.</u>, 54 F.3d 624, 630 (10th Cir.

1995), *see also*, Kendrick v. Penske Transp. Services, Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).  Alternatively, a plaintiff may prove age discrimination with indirect or circumstantial evidence.  Jones, 54 F.3d at 630.  When indirect or circumstantial evidence is relied upon to prove an age discrimination claim, the court applies the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  *Id.*

> *McDonnell Douglas* first requires the aggrieved employee to establish a prima facie case of prohibited employment action.  The burden of establishing a prima facie case . . . by a preponderance of the evidence is not onerous.  Furthermore, [t]his burden is one of production, not persuasion; it can involve no credibility assessment.  If the employee makes a prima facie showing, the burden shifts to the defendant employer to state a legitimate, nondiscriminatory reason for its adverse employment action.  If the employer meets this burden, then summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual.

Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005) (quotations and citations omitted).

In its motion, ONEOK assumes *arguendo* Rumsey can establish a prima facie of discriminatory discharge based on age.  The court therefore assumes, for purposes of ONEOK's motion, that Rumsey has established his prima facie case.  The court additionally concludes that ONEOK has met its burden of stating legitimate nondiscriminatory reasons for its employment decision:

> As set forth in his January 20, 2005 letter, Forsander believed Rumsey was unable to perform his Pipeline Operator job because of the light duty recommendations received from Dr. Altshuler and Dr. Lovell.  Both recommendations were consistent with Rumsey['s] functional capacity evaluation. While potential accommodations were considered, ONEOK was not able to identify anything reasonable in nature which would allow it to maintain Rumsey's employment in his Pipeline Operator job or in another temporary or permanent job within the Company.  With the

exhaustion of all of Rumsey's paid company benefits, his employment
was terminated.

*See*, p. 25 and Ex. 35 of ONEOK's motion.

Under the third step of the <u>McDonnell Douglas</u> framework, the burden shifts
to Rumsey to show that ONEOK's proffered reasons for his discharge were merely
a pretext to hide age discrimination.  *See*, <u>Randle v. City of Aurora</u>, 69 F.3d 441, 451
(10th Cir. 1995); *see also*, <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133
(2000) (plaintiff can withstand summary judgment if plaintiff succeeds in showing a
prima facie case and presents evidence that the defendant's proffered reason for the
employment decision was pretextual).  ONEOK asserts that it is entitled to summary
judgment because Rumsey has produced no evidence from which a reasonable jury
could conclude that Forsander's real reason for terminating Rumsey was age.  The
relevant inquiry is not whether the proffered reasons for discharge were wise, fair or
correct, but whether Forsander honestly believed in those reasons and acted in good
faith upon those beliefs.  <u>Young v. Dillon Companies, Inc.</u>, ___ F.3d ___, 2006 WL
3236297 *5 (10th Cir. Nov. 9, 2006).  In examining the issue, the court must "look at
the facts as they appear to the person making the decision to terminate plaintiff."
<u>Kendrick</u>, 220 F.3d at 1231.  The court's role is not to second guess the employer's
business judgment.  <u>Stover v. Martinez</u>, 382 F.3d 1064, 1076 (10th Cir. 2004).

To establish pretext, a plaintiff must show either that "a discriminatory reason
more likely motivated the employer or . . . . that the employer's proffered explanation
is unworthy of credence."  <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S.
248, 256 (1981); <u>Reeves</u>, 530 U.S. at 147-148.  A plaintiff may accomplish this by
revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or
contradictions in the employer's proffered legitimate reasons for its action that a

-13-

reasonable factfinder could rationally find them unworthy of credence." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quotation and citation omitted).

In his response, Rumsey contends that ONEOK's stated reasons for his discharge (inability to perform his job duties of pipeline operator and exhausted benefits)  appear pretextual due to the fact:

> Plaintiff was, in fact, given a full release from his treating physician on November 29, 2004.  Assuming there was a legitimate good faith belief by Saenz and Forsander that Plaintiff was not, in fact, given a full release, neither made any attempt to get clarification from Dr. Altshuler . . . . Further, Plaintiff was not given another FCE after he was given a full release, or even at a later date when his benefits expired on January 19, 2005. . . .

See, p. 9 of Rumsey's response.

The record reveals that Forsander viewed Dr. Altshuler's November 29, 2004 statement to be a release of Rumsey to light duty.  He did not view it as a full release.[1] Although Rumsey contends that Forsander should have asked for clarification from Dr. Altshuler, Rumsey has presented no authority to show that Forsander was under any duty to ask for such clarification.   After reviewing Dr. Altshuler's statement, Forsander decided to obtain a second medical opinion.  Dr. Lovell's December 17, 2004 opinion was that Rumsey should perform a light duty job.  While Rumsey quarrels with Dr. Lovell's opinion on various grounds,[2] Rumsey has not proffered any

---

[1]In the declaration submitted with his response brief, Rumsey states that the claim of ONEOK's representatives that they did not know what Dr. Altshuler's November 29 statement meant is untrue because he called Bradford, his supervisor, on December 6, and told him he had been given a 100% release with no restrictions.  See, Ex. 1, p. 5, ¶ 14. According to Rumsey, Bradford told him that he would call Tulsa and let them know.  Id.  However, there is no evidence in the record that this information was conveyed to Forsander.

[2]Specifically, Rumsey challenges Dr. Lovell's opinion on the grounds that he never "treated, examined, or spoke to [Rumsey]," relied upon the FCE which "had been given over five (5) weeks

(continued...)

evidence that Forsander believed the opinion to be inaccurate or unnecessary.[3] Rumsey also argues that he should have been given a second FCE prior to termination. But again, he has presented no authority to show that ONEOK was under any duty or obligation to provide further testing.[4]  While Rumsey maintains that the first test was inaccurate, there is no evidence in the record to show that Forsander knew or should have known of the alleged inaccuracy.

As stated, the relevant inquiry is whether Forsander honestly believed the proffered reasons and acted in good faith upon those beliefs.  Young, 2006 WL 3236297 *5.  Rumsey has not produced any evidence that Forsander honestly believed anything other than that Rumsey could not perform the pipeline operator duties because he could only perform a light duty job and that his benefits had been exhausted.

In the declaration filed in support of his response brief, Rumsey refers to several inquiries by Saenz about the possibility of Rumsey retiring and her causing retirement estimate packages to be sent to him.  See, Ex. 1 to Rumsey's response, ¶¶ 17, 20, 21,

---

[2](...continued)
before he made his determination as to [Rumsey's] physical condition as of December 17, 2004," and "did not contact Dr. Altshuler to ask for clarification or additional information."  See, p. 4,¶ 8 of Rumsey's response.

[3]Rumsey also asserts that Forsander's view of Dr. Altshuler's November 29 statement as a release to light duty is unreasonable and not in good faith because Dr. Lovell's opinion considers the statement to be a full release.  The court however concludes that the fact that Dr. Lovell viewed the statement as a full release does not demonstrate that Forsander's belief that the statement was a release to light duty was a not honest or in good faith.

[4]According to Rumsey's declaration, Saenz initially agreed that Rumsey would be given another FCE after he informed Saenz and Bradford that he had been fully released by his treating physician.  However, Rumsey states that Saenz later informed him that the retest would not be arranged and paid for by ONEOK.  There is no evidence in the record, however, that Forsander was aware of the purported agreement of Saenz or was involved in the alleged decision not to arrange for or pay for the retesting.

The court, however, concludes that the alleged retirement inquiries do not raise an inference of age discrimination. The evidence in the record does not support any inference that Saenz had any input into the termination decision.[5] Moreover, there is no evidence that Forsander knew of Saenz's alleged retirement inquiries or requested that they be made. For the alleged retirement inquiries to be evidence of discrimination, Rumsey must demonstrate a nexus between the inquiries and Forsander's decision to terminate Rumsey. Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994). No such showing has been made. The court therefore concludes that the evidence of Saenz's alleged repeated inquires about Rumsey retiring do not create a genuine issue of fact as to whether ONEOK's proffered reasons were pretextual.

Having carefully reviewed the record, the court concludes that Rumsey has failed to present sufficient evidence to show that ONEOK's "proffered reasons were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief." Stover, 382 F.3d at 1076. Because Rumsey has failed to establish a genuine issue of material fact as to whether ONEOK's proffered reasons for terminating his employment was pretextual, the court therefore concludes that ONEOK is entitled to summary judgment on Rumsey's ADEA discriminatory discharge claim.

IV. Wrongful Discharge Claim

In addition to the ADEA claim, Rumsey has asserted a claim for wrongful discharge in violation of Oklahoma's public policy against age discrimination as set

---

[5]Forsander, in his deposition, testified that he had discussions with Saenz and Bennett regarding Rumsey of "what options were available." See, Ex. 4 to Rumsey's response, p. 53. This testimony does not support an inference that Saenz was involved in or had input into the decision to terminate Rumsey. Moreover, there is no evidence to support a finding that Saenz used Forsander as a "cat's paw" to effect an age-biased decision. See, Young, 2006 WL 3236297 *8.

forth in the OADA.  To support the wrongful discharge claim, Rumsey relies upon the "same factual analysis and similar legal principles" for his ADEA claim.  *See*, p.2 and p. 17 of Rumsey's response.  For the reasons stated in regard to the ADEA claim, the court concludes that ONEOK is entitled to summary judgment on the wrongful discharge claim.

V.   ADA Discharge Claim Based Upon "Record of" Disability

ONEOK, in its motion, contends that no evidence exists to support a "record of" disability claim.  In its reply, ONEOK asserts that Rumsey has mentioned the "record of" disability claim only in a conclusory manner in his response.  The court, upon careful review, agrees that Rumsey has not presented any evidence or arguments to support his "record of" disability claim.  The record is devoid of any evidence that Rumsey was disabled based on "a record of such an impairment."  42 U.S.C. § 12102(2)(B).  The court therefore concludes that ONEOK is entitled to summary judgment on the ADA discharge claim based upon "record of" disability.

VI.   ADA Discharge Claim Based Upon Perceived Disability

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual."  42 U.S.C. § 12112(a).  In order to state a prima facie case of disability discrimination under the ADA, Rumsey must establish the following three elements: (1) that he is disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without accommodation, he is able to perform the essential functions of the job; and (3) that ONEOK terminated him because of the disability.  Aldrich v. Boeing Co., 146 F.3d 1265, 1269 (10th Cir. 1999).  ONEOK contends that Rumsey cannot establish the first two elements of the prima facie case.

Turning to the first element, the ADA defines the term "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life

activities of such individual; (2) record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Working is a major life activity. 29 C.F.R. § 1630.2(i).[6] So, the issue before the court is whether ONEOK regarded Rumsey as having a physical or mental impairment that substantially limits the major activity of working.[7]

The Supreme Court has held that to be "regarded as disabled," a plaintiff must show "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999). In other words, even if Rumsey is not actually disabled, he is "disabled" under the ADA if ONEOK mistakenly perceived him as such.

"[T]o establish a disability under the 'regarded as' prong of the ADA with respect to the major activity of working, an individual must show [his] employer regarded him . . . as being substantially limited in performing either a class of jobs or a broad range of jobs in various classes." Steele v. Thiokol Corp., 241 F.3d 1248, 1256 (10th Cir. 2001) (quotation omitted). It is not enough for the employee to show that he is substantially limited in his ability to perform the specific tasks required of a single position. E.E.O.C. v. Burlington Northern & Santa Fe Railway Co., 406

---

[6]The court notes that the Supreme Court has questioned whether "working" can properly be considered a major life activity. See, Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 200 (2002) ("Because of the conceptual difficulties inherent in the argument that working could be a major life activity, we have been hesitant to hold as much . . . ."). However, the Tenth Circuit, in accordance with EEOC regulations, has recognized "working" as a major life activity. MacKenzie v. City and County of Denver, 414 F.3d 1266, 1275 (10th Cir. 2005).

[7]In his briefing, Rumsey has conceded that he has no mental or physical impairment that substantially limits one or more major life activities. The court has also found the record is devoid of any evidence of a "record of" such impairment.

F.Supp.2d 1228, 1232 (W.D. Okla. 2005), *aff'd* 2006 WL 3423483 (10th Cir. Nov. 29, 2006). Hence, the employee is required to demonstrate that his employer treated his impairment as significantly restricting his ability to perform both "(1) the job from which [he] was disqualified, as well as (2) either (a) jobs utilizing similar training, knowledge, skills or abilities" within [his] geographical area or (b) a broad range of "jobs not utilizing similar training, knowledge, skills or abilities" within the geographical area. E.E.O.C. v. Heartway Corp., 466 F.3d 1156, 1164 (10th Cir. 2006).

In this case, Rumsey contends that ONEOK considered Rumsey to be excluded from a class of jobs and a broad range of jobs due to its conclusion from the November 10, 2004 FCE results and Dr. Lovell's December 17, 2004 report that Rumsey could only work in "light duty" jobs. The November 10, 2004 FCE results and Dr. Lovell's December 17, 2004 report do restrict Rumsey to light duty or a light level of work. However, these reports do not establish as a matter of law that Rumsey was unable to perform either a class of jobs or a broad range of jobs. Courts, addressing the issue, have concluded that similar reports, which restrict employees to sedentary, light or other general categories of work, do not as a matter of law establish that an employee is unable to perform a class of jobs and a broad range of jobs. Peters v. City of Mauston, 311 F.3d 835, 842-846 (7th Cir. 2002); Marinelli v. City of Erie, Pa., 216 F.3d 354, 364-365 (3rd Cir. 2000); Thompson v. KN Energy, Inc., 177 F.Supp.2d 1238, 1251-1252 (D. Kan. 2001); Zarzycki v. United Tech. Corp., 30 F.Supp.2d 283, 289-294 (D. Conn. 1998). Consequently, the court concludes that the FCE report and Dr. Lovell's report, standing alone, do not provide sufficient evidence to show that Rumsey's impairment disqualified him from a class of jobs or a broad range of jobs in various classes. The court further concludes that Forsander's reliance upon these reports do not establish that Forsander believed Rumsey to be significantly restricted from performing a class of jobs or a broad range of jobs.

In addition, the record reflects that ONEOK, on two separate occasions, gave Rumsey a listing of other jobs available within the company.  It also provided Rumsey a 1-800 phone number, which provided a listing of open jobs in ONEOK-related companies.  Such evidence indicates that ONEOK did not regard him as substantially limited in his ability to work.  <u>McGeshick v. Principi</u>, 357 F.3d 1146, 1151 (10th Cir. 2004) (employer's invitation to plaintiff to apply for other jobs indicated that employer "did not perceive [plaintiff] as substantially limited in his ability to perform major life activities.").  Although Rumsey complains that ONEOK did not follow its vocational assessment policy to assist him in identifying possible jobs, the court concludes that such fact does not raise a genuine issue of fact as to whether ONEOK regarded him as disabled.  Rumsey implies that the vocational assessment policy was the exclusive or mandatory means for identifying possible jobs.  However, there is nothing on the face of the policy that says it is the exclusive or mandatory means to be used.  The fact remains that ONEOK provided Rumsey with a listing of other jobs and such fact belies Rumsey's claim that ONEOK regarded him as substantially limited in his ability to work.

Finally, Rumsey points to deposition testimony of Saenz that she assumed that Dr. Lovell's December 17, 2004 report limiting plaintiff to light duty covered a broad range of jobs.  However, Forsander, not Saenz, made the decision to terminate Rumsey.  The evidence does not support any inference that Saenz had any input in the employment decision.  Therefore, Saenz's deposition testimony does not create a genuine issue of fact as to whether ONEOK believed that Rumsey was unable to perform a broad range of jobs.

Because Rumsey has failed to establish that he was regarded by ONEOK as substantially impaired with respect to a major life activity of working, he is not disabled within the meaning of the ADA.  "Establishing a disability within the

meaning of the Act is a threshold requirement for all ADA claims." <u>Lanman v. Johnson County, Kansas</u>, 393 F.3d 1151, 1158 (10th Cir. 2004).  Because Rumsey has failed to cross this threshold, the court concludes that ONEOK is entitled to summary judgment on Rumsey's ADA discharge claim based upon perceived disability.

 <u>Conclusion</u>

Based upon the foregoing, the court determines that ONEOK is entitled to summary judgment on all of Rumsey's claims alleged in the Second Amended Complaint.

Accordingly, Defendant's Summary Judgment Motion, filed October 2, 2006 (doc. no. 33), is **GRANTED**.  Judgment shall issue forthwith.

Dated this 11th day of December, 2006.


STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE


05-1136p014(pub).wpd